[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This matter comes before the court on an appeal from a decision of the Redding Planning Commission ("Commission") which granted Sally Reed's application to subdivide her property into two lots. The Commission acted pursuant to Connecticut General Statutes, Sec. 8-18 and the Subdivision Regulations of the Town of Redding. The plaintiff appeals pursuant to Connecticut General Statutes, Secs. 22a-19(a) and 22a-19a.
The issue presented to the court to decide is whether the record supports a finding that the resubdivision has or is likely to have the effect of unreasonably polluting, impairing or destroying the natural resources of the state.
Procedurally, the appeal was timely filed. A return of record, a supplemental return of record and briefs were also filed.
Reed applied to the Commission to resubdivide property located at 115 Cross Highway, Redding, Connecticut, (approximately 17.97 acres) into two lots. The application sought to locate a septic system serving the southerly building lot directly over the primary recharge area of a stratified drift aquifer.
A public hearing was held following proper published notice. On January 11, 1994, the Commission approved the application subject to some modification and conditions.
In order to take advantage of a statutory right to appeal from a decision of an administrative agency, there must be strict compliance with the statutory provisions which created that right. Simko v. Zoning Board of Appeals, 206 Conn. 374,377, 538 A.2d 202 (1988). These provisions are mandatory and jurisdictional; failure to comply subjects the appeal to dismissal. Id.
General Statutes, Sec. 8-28 provides that "[a]ny appeal from an action or decision of a planning commission shall be taken pursuant to the provisions of section 8-8." Section 8-8(b) of the CT Page 2756 General Statutes states that "any person aggrieved by any decision of a board may take an appeal. . . ." The statute further provides that an "`[a]ggrieved person' includes any person owning land that abuts or is within a radius of 100 feet of any portion of the land involved in the decision of the board." General Statutes, Sec. 8-8(a)(1).
The plaintiff does not allege that she is statutorily aggrieved by virtue of owning land that abuts or is within a radius of 100 feet of any portion of the land involved in the decision of the Commission. She does allege, however, that she is statutorily aggrieved pursuant to General Statutes, Secs.22a-19(a) and 22a-19a. Section 22a-19(a) provides:
 In any administrative, licensing or other proceeding, and in any judicial review thereof made available by law, the attorney general, any political subdivision of the state, any instrumentality or agency of the state or of a political subdivision thereof, any person, partnership, corporation, association, organization or other legal entity may intervene as a party on the filing of a verified pleading asserting that the proceeding or action for judicial review involves conduct which has, or which is reasonably likely to have, the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources of the state.
On November 9, 1993, the plaintiff intervened in the proceedings of the Commission by filing a notice of intervention alleging "conduct which has, or is reasonably likely to have, the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources of the State." (ROR, 11-5.) On November 23, 1993, the plaintiff filed a second notice of intervention, alleging "conduct which has, or is reasonably likely to have, the effect of unreasonably destroying the public trust in a historic landmark of the state." (ROR,11-5A.) The verified pleading of intervention "set[s] the parameters of the issues" which may be raised by the intervenor on appeal.Mystic Marinelife Aquarium, Inc. v. Gill, 175 Conn. 483,490, 400 A.2d 726 (1978). One who intervenes in an administrative proceeding pursuant to section 22a-19(a) has "standing to raise only environmental issues." Gardner v.Conservation Commission, 222 Conn. 98, 107, 608 A.2d 672
(1992).
Standing under section 22a-19(a) is limited further by the jurisdiction of the administrative authority whose decision is CT Page 2757 being challenged. "Section 22a-19, which authorizes any person to intervene in any administrative proceeding and to raise therein environmental issues must be read in connection with the legislation which defines the authority of the particular administrative agency." Connecticut Fund for the Environmentv. Stamford, 192 Conn. 247, 250-51, 470 A.2d 1214 (1984). "Section 22a-19 is not intended to expand the jurisdictional authority of an administrative body whenever an intervenor raises environmental issues." Id.
Therefore, the plaintiff has standing for the limited purpose of raising issues concerning the subject resubdivision's environmental impact on the surrounding land. Claims of procedural irregularities or of environmental effects beyond the jurisdiction of the Commission are not properly before this court.
Section 8-8 of the General Statutes provides that an appeal must be taken "within fifteen days from the date that notice of the decision was published. . . ." Notice of the Commission's decision was published in The Redding Pilot on January 13, 1994. (ROR, 1-2.) The town clerk, the chairman and the clerk of the Commission, and Reed were served on January 28, 1994. This appeal is, therefore, timely.
"Appellate review of an agency's decision is of limited scope. The reviewing court does not make a broad, de novo review of the record." Kaeser v. Conservation Commission,20 Conn. App. 309, 311, 567 A.2d 383 (1989), citing Huck v.Inland Wetland Watercourses Agency, 203 Conn. 525, 541,525 A.2d 940 (1987). A "`trial court may not substitute its judgment for the wide and liberal discretion vested in the local authority when acting within its prescribed legislative powers."'Frito-Lay Inc. v. Planning Zoning Commission,206 Conn. 554, 572-73, 538 A.2d 1039 (1988). Thus, the standard to be applied by the trial court is "whether `the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion.'" Smith v. Zoning Board of Appeals,227 Conn. 71, 80, 629 A.2d 1089 (1993). "`The question is not whether the trial court would have reached the same conclusion, but whether the record before the agency supports the decision reached.'" DeBeradinis v. Zoning Commission, 228 Conn. 187,198, 635 A.2d 1220 (1994). "`The action of the commission should be sustained if even one of the stated reasons is sufficient to support it.'" Id., 199. When the commission does CT Page 2758 formally state the reasons for its decision, the court may not probe beyond them. See DeMaria v. Planning ZoningCommission, 159 Conn. 534, 541, 271 A.2d 105 (1970).
"The burden of proof is on the plaintiff to demonstrate that the board acted improperly." Spero v. Zoning Board ofAppeals, 217 Conn. 435, 440, 586 A.2d 590 (1991). The burden of proof on an environmental intervenor is to make at least a prime facie showing that the defendants are reasonably likely to cause unreasonable pollution. Manchester EnvironmentalCoalition v. Stockton, 184 Conn. 51, 59-60, 441 A.2d 68
(1981).
The only potential environmental claim in the plaintiff's appeal is that "(1) [t]he Commission permitted the location of a septic system over the primary recharge area of a significant stratified drift aquifer without adequately considering alternatives. . . ."[1] These allegations are procedural issues rather than environmental issues and, therefore, are not properly before the court. The plaintiff argues that the Commission (1) failed to consider alternate locations for the proposed septic system, and (2) failed to gather sufficient facts upon which to base its decision to grant the subject application. As already noted, one who intervenes pursuant to General Statutes, Sec. 22a-19 in administrative proceedings before a particular administrative agency is limited to raising those environmental issues which are within the administrative body's power to determine. SeeConnecticut Fund for the Environment v. Stamford,
supra, 250-51.
The Town of Redding, Connecticut Subdivision Regulations, Sec. 3.2 states, in pertinent part:
 The following types of land require special evaluation to protect the Town from hazardous development:
 b. Primary and Secondary Aquifer Recharge Areas as delineated on the "Redding Aquifer Protection Districts" Map. (Latest revision.)
 Any subdivision of land which proposes the location of areas for building, site development or construction of facilities within the land types described above shall be subject to the requirements of Section 3.3 hereof.
Section 3.3 of the Subdivision Regulations states, in pertinent part: CT Page 2759
 The Commission may require reasonable design or layout changes to limit the developed area to that land judged safe for development.
 The Commission may permit the development of land evaluated in Section 3.2 only when it finds that no adverse impact to the site and surrounding areas will result to health, safety, the indigenous character of the land or the resources of the area. . . .
When an intervenor files a verified pleading of intervention under section 22a-19(a), the Commission has the following duty under section22a-19(b):
 In any administrative, licensing or other proceeding, the agency shall consider the alleged unreasonable pollution, impairment or destruction of the public trust in the air, water or other natural resources of the state and no conduct shall be authorized or approved which does, or is reasonably likely to, have such effect so long as, considering all relevant surrounding circumstances and factors, there is a feasible and prudent alternative consistent with the reasonable requirements of the public health, safety and welfare.
Mystic Marinelife Aquarium, Inc. v. Gill, supra, 499; see also Red Hill Coalition, Inc. v. Town Plan ZoningCommission, 212 Conn. 727, 735, 563 A.2d 1339 (1989). Not all pollution is unreasonable, however, and only unreasonable pollution shall not be authorized. See ManchesterEnvironmental Coalition v. Stockton, supra, 59-60. The question of what is reasonable is one of fact, and where "the record reasonably supports the conclusion that the proposed permit activity would not have the effect interdicted by22a-19(b)," the trial court must sustain the conclusion. MysticMarinelife Aquarium, Inc. v. Gill, supra, 502-03. Under section 22a-19(b), the Commission need only determine whether a "feasible and prudent alternative" exists if it finds that the activity proposed has, or is reasonably likely to have, the effect of unreasonably polluting, impairing or destroying natural resources of the state which comes within its jurisdiction to regulate. Id., 499; see General Statutes, Sec. 22a-19(b).
In exercising its function of approving or disapproving any particular subdivision plan, a planning authority acts in an administrative capacity. Reed v. Planning ZoningCommission, 208 Conn. 431, 433, 544 A.2d 1213 (1988). "The CT Page 2760 planning commission, acting in its administrative capacity herein, has no discretion or choice but to approve a subdivision if it conforms to the regulations adopted for its guidance." Id.
In the present case, Steven Trinkaus, a professional engineer, represented that there would be a 30 inch vertical separation between the bottom of the leaching field and the ground water. At the public hearing on November 9, 1993, Trinkaus suggested that such a vertical separation should be a condition to any approval of this application[2] and noted that such a separation was discussed in the aquifer regulations for residential septic systems in the Town of Redding. At the same hearing, Trinkaus testified that his professional opinion was that the location of the septic system would not adversely affect the stratified drift aquifer.
Jim MacBroom, the Commission's engineering consultant, also represented that the suggested 30 inch separation between the leaching field and the ground would be acceptable. Furthermore, the Commission was provided with Trinkaus's soil suitability report, the Redding Health Officer's report, and the Bridgeport Hydraulic Company's report, none of which expressed concern with the proposed septic system design.
The Commission had sufficient evidence to support the conclusion that "no adverse impact to the site and surrounding areas will result to health, safety, the indigenous character of the land or the resources of the area . . . ." Subdivision Regulations, Sec. 3.3.6.
Further, the Commission had sufficient evidence to support the conclusion that the activity proposed neither has, nor is reasonably likely to have, the effect of unreasonably polluting, impairing or destroying natural resources of the state which comes within its jurisdiction to regulate. Absent such a determination, the Commission has no obligation to determine whether a "feasible prudent alternative" exists. General Statutes, Sec. 22a-19(b).
Alternatively, the plaintiff appeals pursuant to General Statutes, Sec. 22a-19a. Section 22a-19a states, in pertinent part:
 The provisions of section 22a-15 to 22a-19, inclusive, shall be applicable to the unreasonable destruction of historic structures and CT Page 2761 landmarks of the state, which shall be those properties (1) listed or under consideration for listing as individual units on the National Register of Historic Places. . . or (2) which are a part of a district listed or under consideration for listing on said national register and which have been determined by the state historic preservation board to contribute to the historical significance of such district. If the plaintiff in any such action cannot make a prima facie showing that the conduct of the defendant, acting alone or in combination with others, has or is likely unreasonably to destroy the public trust in such historic structures or landmarks, the court shall tax all costs for the action to the plaintiff.
The plaintiff has failed to make a prima facie showing that the conduct of the defendant, acting alone or in combination with others, has or is likely unreasonably to destroy the public trust in such historic structures or landmarks. There is no evidence in the record that the subject property is either "(1) listed or under consideration for listing as individual units on the National Register of Historic Places. . . or (2) which are part of a district listed or under consideration for listing on said national register and which have been determined by the state historic preservation board to contribute to the historic significance of such district." General Statutes, Sec. 22a-19a. In fact, the Commission's approval of the application was subject to numerous modifications and conditions of approval, the first of which provides:
 1. In order to preserve the cultural and historic value of this rural farm property, the Commission finds it is essential to preserve the open meadow which lends significant character to this over 200 year old farm. Accordingly, a Scenic Easement approved by the Commission shall be deeded to the Redding Land Trust to maintain the lowland meadow south of the building site in its present state and prohibit construction of any sheds or accessory buildings in this area. The Scenic Easement shall be shown on all applicable maps and be recorded in the Land Records. (ROR, I-1.)
Therefore, the Commission's approval of the subject resubdivision will not cause unreasonable destruction of the historic structures and landmarks of the state.
The Commission did not act unreasonably, arbitrarily, illegally, or in abuse of its discretion in granting the subject application. The plaintiff's appeal is hereby dismissed. CT Page 2762
Mihalakos, J.