FRANK E. AHEARN, TRUSTEE, ET AL. *v.* INLAND WETLANDS AGENCY-CONSERVATION COMMISSION OF THE TOWN OF SOUTH WINDSOR ET AL. (11996)

FOTI, LAVERY and LANDAU, Js.

Argued November 5, 1993—decision released May 17, 1994

*Frank E. Ahearn,* for the appellants (plaintiffs).

*John F. Sullivan,* with whom, on the brief, was *Ralph J. Alexander,* for the appellees (defendants).

LAVERY, J. The plaintiffs[1] appeal from the trial court's dismissal of their appeal from a cease and desist order issued by the South Windsor inland wetlands agency-conservation commission.[2] The plaintiffs claim that the trial court improperly concluded that the commission had correctly asserted jurisdiction over a portion of their land pursuant to regulations that they claim conflict with General Statutes § 22a-42a (b).[3] We affirm the decision of the trial court.

[1] The plaintiffs are Frank E. Ahearn, trustee, and Mary I. Ahearn, beneficiary of the trust.

[2] The plaintiffs originally brought suit against the named defendant and Leslie Carothers, commissioner of the department of environmental protection. The plaintiffs withdrew their case against Carothers on May 15, 1992.

[3] General Statutes § 22a-42a (b) provides in pertinent part: "No regulations of an inland wetlands agency including boundaries of inland wetland and watercourse areas shall become effective or be established until after a public hearing in relation thereto is held by the inland wetlands agency, at which parties in interest and citizens shall have an opportunity to be heard. Notice of the time and place of such hearing shall be published in the form of a legal advertisement . . . before such hearing, and a copy of such proposed regulation or boundary shall be filed in the office of the town . . . clerk . . . for public inspection . . . . Such regulations and inland wetland and watercourse boundaries may be from time to time amended, changed, repealed, by majority vote of the inland wetlands agency, after a public hearing in relation thereto is held by the inland wetlands agency, at which parties in interest and citizens shall have an opportunity to be heard and for which notice shall be published in the manner specified in this subsection. Regulations or boundaries or changes therein shall become effective at such time as is fixed by the inland wetlands agency, provided a copy of such regulation, boundary or change shall be filed in the office

In May, 1990, the plaintiffs constructed an earth berm on their property in South Windsor to redirect surface water flowing from a neighboring property. On May 31, 1990, the commission's wetlands enforcement officer notified the plaintiffs that they had constructed the berm in a regulated area without a permit. He ordered the plaintiffs "to cease any further work in the regulated area." Prior to this notice, there had not been a determination by the commission that the area in question was a watercourse nor did the commission's map of regulated areas designate any wetlands or watercourses on or near the plaintiffs' property.

At a meeting of the commission on July 16, 1990, the plaintiffs contended that the intermittent watercourse did not appear on the commission's map of regulated areas and that, therefore, the commission had no jurisdiction over their property. They further contended that the water flow and the resulting channel were caused by the actions of the adjacent property owner. The commission sought opinions from the Connecticut department of environmental protection and the Hartford County soil and water conservation district on whether the plaintiffs had acted in a watercourse. Both agencies concluded that the area was in fact an intermittent watercourse subject to commission regulations. Further, both agencies concluded that the watercourse existed prior to the neighbor's actions. The commission then issued a cease and desist order and ordered the plaintiffs to remove the fill placed in the intermittent watercourse.

The plaintiffs appealed to the Superior Court on November 2, 1990, alleging that the commission had

of the town . . . clerk . . . . Whenever an inland wetlands agency makes a change in regulations or boundaries it shall state upon its records the reason why the change was made and shall provide a copy of such regulation, boundary or change to the commissioner of environmental protection . . . ."

violated General Statutes § 22a-42a by amending the boundaries of inland wetlands without holding a public hearing. After hearing argument, the trial court dismissed the appeal. In its memorandum of decision, the trial court ruled that the commission had not violated § 22a-42a because the commission's map depicted regulated areas only generally and the town regulations established that regulated areas also included "that which actually exists . . . ." Therefore, because the plaintiffs' land included an existing watercourse, the regulations established that the plaintiffs' land was a regulated area within the commission's jurisdiction. The plaintiffs then appealed to this court.

The plaintiffs claim that the commission's regulations conflict with § 22a-42a. The jurisdiction of the commission is limited by the boundaries of wetlands and watercourse areas; *Connecticut Fund for the Environment, Inc.* v. *Stamford,* 192 Conn. 247, 250, 470 A.2d 1214 (1984); also known as the "regulated area." The commission's regulations define the regulated areas, and thus the commission's jurisdiction, as those areas shown on the commission's map of regulated areas. The South Windsor Inland Wetlands, Watercourses, and Conservation Regulations § 3.1 (1993)[4] (hereinafter South Windsor Regulations). The regulations also provide that the regulated area "shall be that which actually exists and will be determined by a declaratory ruling of the [commission] . . . ." South Windsor Regulations § 3.1. The regulations define the term "regulated area" as all wetlands and watercourses and those areas within forty and eighty feet, respectively. South Windsor

[4] Section 3.1 of the South Windsor Inland Wetlands, Watercourses, and Conservation Regulations provides in pertinent part: "The Agency shall establish a boundary map which shall be entitled 'Inland Wetlands and Watercourses, Town of South Windsor, Connecticut.' . . . The regulated area, however, shall be that which actually exists and will be determined by a declaratory ruling of the Agency in accordance with the procedure herein set forth. . . ."

Regulations § 2.1 (q).[5] The word "watercourse" is, in turn, defined as "rivers, streams, brooks, waterways, lakes, ponds, marshes, swamps, bogs and all other bodies of water, natural or artificial, public or private, vernal or intermittent . . . ." South Windsor Regulations § 2.1 (w).[6] The term "intermittent watercourse" is defined in technical terms of water presence and soil content. South Windsor Regulations § 2.1 (j).[7] In sum, the town regulations grant the commission jurisdiction over any area, mapped or unmapped, if by declaratory ruling the commission rules that the area falls within the definition of "regulated area."

The plaintiffs allege that these regulations conflict with the Inland Wetlands and Watercourses Act. General Statutes § 22a-36 et seq.[8] "Under the act the com-

[5] Section 2.1 (q) of the South Windsor Inland Wetlands, Watercourses, and Conservation Regulations provides in pertinent part: " 'Regulated Area' means all wetlands and watercourses in the Town of South Windsor as defined in these regulations; and all areas within forty (40) feet of the boundary of such wetlands or 80 feet of the boundary of such watercourses. Regulated areas are generally shown on a map . . . on file in the Planning Department. The regulated area, however, shall be that which actually exists and will be determined by a declaratory ruling of the Agency in accordance with procedures herein set forth . . . ."

[6] Section 2.1 (w) of the South Windsor Inland Wetlands, Watercourses, and Conservation Regulations provides: " 'Watercourses' means rivers, streams, brooks, waterways, lakes, ponds, marshes, swamps, bogs, and all other bodies of water, natural or artificial, public or private, vernal or intermittent, which are contained within, flow through, or border upon the Town of South Windsor or any portion thereof . . . ."

[7] Section 2.1 (j) of the South Windsor Inland Wetlands, Watercourses, and Conservation Regulations provides: " 'Intermittent Watercourse' means those waterways characterized by non-persistent flow. For the purposes of these regulations, intermittent watercourses are delineated by one or more of the following characteristics: (1) A defined permanent channel with the evidence of scour or deposits of recent alluvium or detritus. (2) The presence of standing or flowing water for a duration longer than a particular storm incident. Ordinarily, the presence of water is supported by a component, however small, of groundwater outflow or exfiltration. (3) The presence of, or ability to support the growth of hydrophytes . . . ."

[8] General Statutes § 22a-37 provides: "Sections 22a-36 to 22a-45, inclusive, shall be known and may be cited as 'The Inland Wetlands and Watercourses Act.' "

missioner of environmental protection (commissioner) is charged with the responsibility of protecting inland wetlands and watercourses by, inter alia, regulating activity which might have an adverse environmental impact on such natural resources. Under §§ 22a-42[9] and 22a-42a, any municipality, acting through its legislative body, may authorize or create a board or commission to regulate activities affecting the wetlands and watercourses located within its territorial limits and any such board or commission is authorized to grant, deny or limit any permit for a regulated activity. . . . The municipal inland wetland agency is authorized to establish the boundaries of inland wetlands and watercourse areas within its jurisdiction." *Connecticut Fund for the Environment, Inc.* v. *Stamford,* supra, 192 Conn. 249–50. Section 22a-42a (b) provides that the jurisdictional boundaries of the commission may be established and changed only after public notice and a hearing. "Once such boundaries are established . . . no regulated activity shall be conducted within such boundaries without a permit issued by the local agency." Id., 250. Thus, the act permits local conservation commissions to act within the areas of actual wetlands and watercourses and restricts the manner in which that jurisdiction may be invoked.

---

[9] General Statutes § 22a-42 provides in pertinent part: "(a) To carry out and effectuate the purposes and policies of sections 22a-36 to 22a-45, inclusive, it is hereby declared to be the public policy of the state to require municipal regulation of activities affecting the wetlands and watercourses within the territorial limits of the various municipalities or districts. . . .

"(c) On or before July 1, 1988, each municipality shall establish an inland wetlands agency or authorize an existing board or commission to carry out the provisions of sections 22a-36 to 22a-45, inclusive. Each municipality, acting through its legislative body, may authorize any board or commission, as may be by law authorized to act, or may establish a new board or commission to promulgate such regulations, in conformity with the regulations adopted by the commissioner pursuant to section 22a-39, as are necessary to protect the wetlands and watercourses within its territorial limits. . . ."

Since the decision in *Aaron* v. *Conservation Commission,* 183 Conn. 532, 538, 441 A.2d 30 (1981), the language of the act has been "interpreted" according to the underlying legislative policy. That policy is " 'to protect the citizens of the state by making provisions for the protection, preservation, maintenance and use of the inland wetlands and water courses by minimizing their disturbance and pollution; [and by] maintaining and improving water quality in accordance with the highest standards set by federal, state or local authority . . . . ' " Id.

Our Supreme Court has, over the years, used this policy to add its expansive judicial gloss to the language of the statutes. *Mario* v. *Fairfield,* 217 Conn. 164, 180, 585 A.2d 87 (1991) (*Covello, J.,* dissenting). Thus, inland wetland commissions can now exercise jurisdiction outside their jurisdictional boundaries if activities on "unregulated" land would affect wetlands. *Aaron* v. *Conservation Commission,* supra, 183 Conn. 542–43; see also *Mario* v. *Fairfield,* supra, 172; *Connecticut Fund for the Environment, Inc.* v. *Stamford,* supra, 192 Conn. 250–51. Similarly, a commission can impose a condition of off-site compensation of wetlands lost as long as it considers the impact of the application on the subject property. *Red Hill Coalition, Inc.* v. *Conservation Commission,* 212 Conn. 710, 722–23, 563 A.2d 1339 (1989). A commission can now regulate a zone outside its jurisdictional boundaries without a case-by-case review of the impact on the land within its jurisdiction. *Lizotte* v. *Conservation Commission,* 216 Conn. 320, 337, 579 A.2d 1044 (1990). Finally, the general purpose of the act has also been found to permit an agency to assert jurisdiction over land use distant from its jurisdictional boundaries. *Mario* v. *Fairfield,* supra, 171.

In all of these cases, the issue was whether the action of the commission pursuant to its regulations was permissible under the language of § 22a-42a. In each, the

action of the commission was deemed not to conflict with the specific language of the act restricting the jurisdiction of commissions. Our Supreme Court has ruled that commissions can act pursuant to their regulations unless the "ordinance permits or licenses that which the statute forbids, or prohibits that which the statute authorizes; if so, there is a conflict. If, however, both the statute and the ordinance are prohibitory and the only difference is that the ordinance goes further in its prohibition than the statute, but not counter to the prohibition in the statute . . . there is no conflict." *Aaron* v. *Conservation Commission,* supra, 183 Conn. 544. This test is founded on the principle that "[a] local ordinance, enacted pursuant to the police power, is not necessarily inconsistent with a state law on the same subject just because the ordinance provides higher standards than the statute." Id., 543.

We now must apply the conflict test as enunciated in *Aaron* using the interpretation of § 22a-42a established by *Aaron* and its progeny. The plaintiffs assert that the regulations conflict because they permit the commission to exercise its jurisdiction without mapping and without complying with the notice and hearing provisions of the statute. We agree with the plaintiffs' reading of the regulations. The commission's regulations allow the commission to assert jurisdiction over any area, mapped or unmapped, that matches the descriptions provided. Further, the regulations permit the commission to alter its jurisdictional boundaries to include regulated areas that actually exist simply by declaratory ruling.

We cannot agree, however, with the plaintiffs that this regulatory scheme conflicts with § 22a-42a. The regulations enlarge the jurisdiction of the commission as granted by the statutes by including within its jurisdiction any area meeting the description of "regulated area." Thus, any area within the town that meets the

description in the regulations is a regulated area and has been since adoption of the regulations. The regulations merely require the commission to identify a piece of land as within the definition of a "regulated area" for the commission to assert its authority. It is clear that the regulations simply enlarge on, and do not conflict with, the statute.

Moreover, it is clear that the regulations further the broad legislative purpose of the wetlands act. As *Aaron* and its progeny establish, regulations that are reasonably designed to effectuate the legislative purpose do not conflict with the statute. See *Mario* v. *Fairfield,* supra, 217 Conn. 172; *Lizotte* v. *Conservation Commission,* supra, 216 Conn. 336–37; *Aaron* v. *Conservation Commission,* supra, 183 Conn. 543.

"Although we have recognized that the policy decision to protect wetlands and watercourses must be balanced against the productive use of privately owned land; *Red Hill Coalition, Inc.* v. *Conservation Commission,* [supra, 212 Conn. 719]; we have also indicated that this balancing process is more appropriately conducted in a legislative rather than a judicial setting. Thus, '[a]n agency which has the authority to enact regulations is vested with a large measure of discretion, and the burden of showing that the agency has acted improperly rests upon the one who asserts it.' *Aaron* v. *Conservation Commission,* supra, [183 Conn. 537]; see *Blue Sky Bar, Inc.* v. *Stratford,* [203 Conn. 14, 23, 523 A.2d 467 (1987)]. 'Every intendment is to be made in favor of the validity of the ordinance, and it is the duty of the court to sustain the ordinance unless its invalidity is established beyond a reasonable doubt.' *Connecticut Theatrical Corporation* v. *New Britain,* 147 Conn. 546, 553, 163 A.2d 548 (1960); *Blue Sky Bar, Inc.* v. *Stratford,* supra [23]; *Aaron* v. *Conservation Commission,* supra [537]." *Lizotte* v. *Conservation Commission,* supra, 216 Conn. 336–37.

The similarity between the facts of this case and those in *Aaron* further undermine the plaintiffs' argument. In *Aaron*, the plaintiffs challenged regulations that established the regulated area both by map and by definition. The regulations stated that "[i]n each instance . . . the actual character of the soil shall determine whether land in question is subject to regulations." (Internal quotation marks omitted.) *Aaron* v. *Conservation Commission,* supra, 183 Conn. 546. Our Supreme Court upheld the regulations. "Because the same types of soil are being regulated, and because, in each instance, it is the type of soil which is determinative of whether certain land is a wetland, there is no conflict. This language does not expand the jurisdiction of the commission. While the statute defines 'wetlands' and how it can be determined, the language in § 1.16 implements the statutory purposes of the act by setting forth permissible standards to assist in determining, informationally, whether a particular location is the situs of a wetland." Id.

In this case, the regulations establish the jurisdictional boundaries by map and by definition. In each instance, the character of the soil determines whether it falls under the commission's jurisdiction. Therefore, the language implements the statutory purpose and does not impermissibly expand the commission's jurisdiction.

Finally, we note that the plaintiffs argue for a literal reading of the statute. The plaintiffs' argument is supported forcefully by the dissents in *Lizotte* v. *Conservation Commission,* supra, 216 Conn. 340–41 (*Covello, J.,* dissenting) and *Mario* v. *Fairfield,* supra, 217 Conn. 180 (*Covello* and *Callahan, Js.,* dissenting). That support, however, comes *only* in the form of dissent.

In this case, the regulations do not conflict with § 22a-42a; rather they enlarge on and are more com-

prehensive than the statute. We find that the regulations are not in conflict or in excess of the statutory authority but rather implement the statutory authority to effectuate the legislative purpose of protecting watercourses.

The judgment is affirmed.

In this opinion the other judges concurred.