[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION TO DISMISS
This is an action brought in one count by an individual and a group of organizations seeking to close down the operation of a nuclear electric generating plant at Millstone in Niantic, Connecticut. The plaintiffs are Fish Unlimited, Don't Waste Connecticut, Star Foundation, North Fork Environmental Council, Inc., Assemblyman Fred Thiele, Green Party of Connecticut, Town of East Hampton, New York, and Coalition Against Millstone. These are described in paragraph nine of the complaint as numerous grass-roots and long-established organizations located on Long Island, New York which have a combined membership of some 10,000 individuals devoted to educating the public of the dangers associated with the operations of the Millstone reactors located eleven miles from the north shore of Long Island and to the permanent closure of Millstone.
The defendants in this case are Northeast Nuclear Energy Company, the operators of the Millstone reactors, and Northeast CT Page 10104 Utilities Service Company which is a parent corporation of Northeast Nuclear Energy Company and is involved in the management and operation of the Millstone reactors. The defendants are hereafter referred to as "NU".
The plaintiffs allege that the Millstone intakes and discharges to and from Long Island Sound constitute unreasonable pollution, impairment and destruction of the air, water and other natural resources of the state within the meaning of Connecticut General Statutes § 22a-16. The plaintiffs seek a temporary and permanent injunction enjoining the operations of Millstone which requires an NPDES permit and a declaratory judgment declaring the invalidity of the NPDES permit issued to NU in December of 1992 plus costs and attorneys fees. The plaintiffs allege that the three Millstone units, when operating, use "once through condenser cooling water systems" where water is drawn from Niantic Bay through intake structures and discharged to Long Island Sound through a system of internal pipes and that this system contributes significantly to the virtual collapse of the winter flounder population in the Niantic River; to serious depletion of other aquatic species entrained and impinged at the intake structures; that the water discharges contain toxic contaminants, heavy metals and carcinogens as well as radioactive waste products and that such water discharges are released at elevated temperatures and create a "thermal plume" in Long Island Sound.
They further allege the generation of electricity at Millstone requires issuance of a National Pollution Discharge Elimination system ("NPDES") permit pursuant to the Federal Clean Water Act, 33 U.S.C. § 1251, et. seq. 2nd that under applicable law an NPDES permit was issued to NU which expired on December 13, 1997 and that although the defendants applied to renew this permit by filing an application within the required time limit the application was legally deficient because at that time Millstone was not generating electricity and consequently Millstone is operating without a valid permit.
In addition to the above allegations the plaintiffs allege that NU has acted in bad faith in its efforts to renew its permit and that NU and DEP ie. the Connecticut Department of Environmental Protection have together acted in bad faith and in collusion whereby the public trust in the air, water and other natural resources of the state has been undermined and that as a direct consequence of said pattern of collusion between DEP and CT Page 10105 NU the plaintiffs have no adequate remedy at law.
The defendants have filed a motion to dismiss citing four grounds: (1) plaintiffs lack standing to maintain the present action; (2) plaintiffs have failed to exhaust their available administrative remedies; (3) plaintiffs' claims are barred by res judicata; and (4) plaintiffs' claims are barred by the prior pending action doctrine. Plaintiffs and defendants have filed briefs and the defendants have filed a supplemental memorandum of law.
This court is in agreement with the defendants as to the first and second grounds of their motion to dismiss. In the opinion of the court the plaintiffs lack standing to bring this action directly into court under Section 22a-16.
A combination of the cases of Connecticut Fund for theEnvironment, Inc. v. Stamford, 192 Conn. 247 (1984) andMiddletown v. Hartford Electric Light Company, 192 Conn. 591
(1984) explains the limitations on Section 22a-16 and explains that an action such as that purposed by the plaintiffs should be brought under Section 22a-19 by way of an intervention with the DEP, which according to the arguments of counsel, has already taken place. The court in Middletown v. Hartford Electric Light
stated "We are unpersuaded that the legislature intended, in the cited statutes, to create private causes of action to supplement the pervasive regulatory powers of the DEP over environmental licenses.' In the Connecticut Fund case the court held that Section 22a-19, which authorizes any person to intervene in any administrative proceeding and to raise therein environmental issues must be read in connection with the legislation which defines the authority of a particular administrative agency and thus a local inland wetland agency had no authority over any activity that was situated outside of its jurisdictional limits. In so doing the court held "Other environmental impacts must be raised before other appropriate administrative bodies, if any, or in their absence by the institution of an independent action pursuant to Section 22a-16." It is evident in this case that there is an environmental agency equipped to hear matters involving the issuance of permits and questions of pollution, etc. and that such action should be brought through Section 22a 19. In the Middletown v. Hartford Electric Light Company case the court held that the invocation of § 22a-16 "is not an open sesame for standing to raise environmental claims with regard to any and all environmental legislation." In that case the City of CT Page 10106 Middletown sought to enjoin Hartford Electric Light Company under Section 22a-16 from burning oil containing PCB's on the basis that it had failed to obtain many different licenses including a water discharge permit under General Statutes Section 22a-430. (The same section under which NU has sought a renewal of its permit.) In that case the court held "For all of these claims, the trial court concluded that the plaintiffs lack standing. We agree." The court held that Section 22a-1G did not provide the plaintiffs with standing under any statute other than the Environmental Protection Act itself.
As to the defendants second ground it is undeniable that the plaintiffs have an adequate administrative remedy before the DEP and it is a settled principle of administrative law that if an adequate administrative remedy exists it must be exhausted before the Superior Court will obtain jurisdiction. Housing Authority v.Papandrea, 222 Conn. 414.
The plaintiffs have attempted to carve out an exception to the exhaustion rule by alleging that the DEP (which would conduct a hearing as to which the plaintiff would be an intervener under Section 22a-19) was in collusion with NU and thus, it would be futile for the plaintiff to appear before DEP and therefore it would have no adequate remedy at law.
In a prior case involving Fish Unlimited and four other of the parties in this case,[1] hereinafter "FISH I," the plaintiffs attempted to influence the court by detailed cross examination hinting at collusion. For the first time, however, the plaintiffs, all eight, have affirmatively alleged bad faith and collusion in their complaint in this case. Contrary to the approach taken by the defendants in their supplementary memorandum of law, this court cannot agree that the matter of bad faith and collusion was litigated and any decision made in "FISH I".
In the opinion of this court, if the defendants could prove that there was collusion between NU and the DEP it would be futile to bring the matters involved in this case, i.e. pollution, to a hearing before the DEP and thus, in such a case, in accordance with Connecticut Fund for the Environment v.Stamford, this action might be brought directly under Section22a-16 as an exception to the general rule. This, in the opinion of the court, would require an evidentiary hearing prior to a ruling on the motion to dismiss with a determination as to CT Page 10107 whether or not there was or is collusion between DEP and NU with respect to the pollution claims.[2] However, despite inquiries by the court at the hearing on the motion to dismiss with respect to the question of an evidentiary hearing, the plaintiffs have not seen fit to make any offer of proof or seek such an evidentiary hearing.
The court, therefore, concludes that the plaintiffs have abandoned these allegations. The motion to dismiss shall therefore be granted on the basis that the plaintiffs have failed to exhaust their available administrative remedies.
With respect to the defendants' claim of res judicata and also with respect to the similar claim of prior pending doctrine, the court must disagree. The matter before the court at this time is separate and distinct in every way from the first matter, in "FISH I". No allegation of collusion or bad faith was made in the complaint in that case. There were only five parties, not eight.[3] In that case there was no allegation made with respect to the failure to obtain a valid permit although the court allowed evidence with respect to this point in order to get a more complete picture of the complicated situation involved in that case, but no decision was made by the court with reference to that point. In that case the principle allegation had to do with an attempt to keep Millstone II from being reopened. That is not claimed in the present case. In this case the plaintiffs are attempting to close down all three Millstone plants.
As to the prior pending action doctrine, at the time this action was brought the court had, in the prior Fish case issued a final judgment when it denied the request for reconsideration and reargument.
In the opinion of the court the plaintiffs in this case lack standing to bring the action under Section 22a-16 and have failed to exhaust administrative remedies which are available to them. Consequently the court herewith grants the motion to dismiss.
With respect to the application for a temporary restraining order dated June 21, 1999, the same is denied. It is predicated upon an allegation that operations of Millstone Unit III require issuance of a valid NPDES permit. The request of the plaintiffs in this case has been brought to the wrong forum. It should be addressed to the Department of Environmental Protection. CT Page 10108
Hale, J.